NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.P., et al., | Civil Action No. 07-5975 (TJB) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| SOUTH BRUNSWICK BOARD OF EDUCATION, | |
| Defendant. | |

**BONGIOVANNI, Magistrate Judge**

Presently before the Court are Plaintiffs M.P. and E.C.'s (collectively "Plaintiffs") Motion for Reversal of the Decision of the Administrative Law Judge, and Defendant South Brunswick Board of Education's ("South Brunswick") request for judgment based on the record below before the Administrative Law Judge. The Court considered Plaintiff's Motion and Defendant's request without oral argument pursuant to FED.R.CIV.P. 78. For the reasons stated below, after fully considering all papers submitted by the parties, and for good cause shown, the Court DENIES Plaintiffs' Motion [Docket Entry No. 10] and GRANTS South Brunswick's request for judgment.

**I.   BACKGROUND**

This Individuals with Disabilities Education Act ("IDEA") case was brought on E.P.'s behalf by Plaintiffs, E.P.'s parents. It concerns South Brunswick's proposed individualized education program ("IEP") for E.P. for the 2007-2008 academic year in which E.P. would attend sixth-grade, his first year of middle school. The proposed IEP at issue recommended that E.P. continue his education in public school at the Crossroads South Middle School for the 2007-2008

school year.  It called for E.P. to participate in mainstream classes for his academic subjects (i.e., reading, language arts, mathematics, science and social studies) with the assistance of an in-class support special education teacher.  It also proposed that E.P. continue to have paraprofessional assistance in lunch, art, foreign language and for implementation of his social skills/behavior plan.  Similarly, it required that a paraprofessional be available to E.P. for hall passing time between class periods and to provide E.P. with an OT break after lunch and prior to reentry to the classroom.  In addition, the proposed IEP provided that E.P. be placed in an academic support class four times a week during the last period of the school day Monday through Friday, where the in-class support teacher would assist E.P. with general academic support to address organization needs, among other topics.

      Further, the proposed IEP called for E.P. to attend small group speech/language sessions once per week (reduced from twice per week), small group counseling sessions twice per month and individual counseling as needed.  It also contained specific speech and language as well as social skills goals.

      The proposed IEP also noted that a Behavior Intervention Plan ("BIP") for self-injurious behavior was currently in place and that a BIP continued to be necessary.  The proposed IEP did not, however, include a proposed BIP for the 2007-2008 academic year, but instead indicated that baseline data regarding E.P. would be collected during his first two weeks at Crossroads South Middle School, after which a meeting between E.P.'s case manager and parent(s) would be conducted in order to implement a BIP if needed.

      The proposed IEP, which was developed as a result of an annual review and in order to plan for the transition of E.P. from elementary school to middle school, was presented to

Plaintiffs during an IEP meeting held on March 27, 2007. On April 9, 2007, Plaintiffs filed a petition with the State Department of Education requesting a due process hearing. On May 7, 2007 the State Department of Education transmitted the matter to Administrative Law Judge Donald J. Stein ("Judge Stein"). Judge Stein heard the matter over six days and the record was closed on October 26, 2007. In the interim, when it became clear that this matter would not be decided before the beginning of the 2007-2008 school year, Plaintiffs informed South Brunswick of their intention to unilaterally remove E.P. from the South Brunswick public school system and place him, instead, in the private Newgrange School. On November 15, 2007, Judge Stein rendered his opinion finding that Plaintiffs had failed to satisfy their burden of proof that South Brunswick's proposed IEP was inappropriate and not reasonably calculated to provide E.P. with a meaningful educational benefit in the least restrictive environment.

**II.     STANDARD**

     **A.     IDEA**

The IDEA "establishes minimum requirements for the education of children with disabilities." *Holmes v. Millcreek Twp. School Dist.*, 205 F.3d 583, 589 (3d Cir. 2000). It mandates that all states that receive federal funding under the statute guarantee to provide "a free and appropriate education" ("FAPE") to all disabled children. 20 U.S.C. § 1412. A FAPE exists where a child is provided with "such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 189 (1982).

Pursuant to the IDEA, for every disabled child identified as eligible for special education, a written statement called an IEP is created. 20 U.S.C. §1412(a)(4). The IEP, which is specially designed for each child and which addresses several elements as outlined in 20 U.S.C.

1414(d)(1)(A), is designed to effectuate a FAPE for the child. *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003). The IDEA does not require that a school district maximize a student's potential or provide the best education possible. Instead, the IDEA requires the school district to provide a "'basic floor of opportunity' but not necessarily 'the optimal level of services. . . .'" *Holmes*, 205 F.3d at 589-90 (quoting *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 533-34 (3d Cir. 1995)). The school district's statutory obligation is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley*, 458 U.S. at 203. Thus, the IEP must provide "meaningful" access to education and confer "some educational benefit" upon the child. *Id.* at 192, 200. Further, while the IEP need not provide for the optimal level of services, in order to be appropriate, the educational benefit conferred must be more than trivial. *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999). A satisfactory IEP offers the potential for "significant learning" and "meaningful benefit[,]" and is "gauged in relation to the child's potential[.]" *Id.* (internal quotation marks and citation omitted).

The IDEA also requires that children falling under its provisions be educated in the "least restrictive environment." 20 U.S.C. § 1412(a)(5)(A). Indeed, the IDEA expresses a strong preference for "mainstreaming" students: educating disabled students side-by-side non-disabled students. The Third Circuit has interpreted this requirement to mean "mandating education 'in the least restrictive environment that will provide [the student] with a meaningful educational benefit.'" *S.H.*, 336 F.3d at 265 (quoting *T.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir. 2000)). In other words, "[t]he least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not

4

disabled, in the same school the disabled child would attend if the child were not disabled." *Carlisle Area Sch.*, 62 F.3d at 535.

Where parents believes that a school district's IEP does not provide their child with a FAPE as required by the IDEA, they may object to the IEP by requesting either a due process hearing or a mediation session. *See Lascari v. Bd. of Educ.*, 116 N.J. 30, 37 (1989). The burden of establishing the inadequacy of the proposed IEP rests on the challenging party. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *L.E. v. Ramsey Bd. Of Educ.*, 435 F.3d 384, 391 (3d Cir. 2006). The Court's inquiry, however, remains focused on evaluating "the IEP actually offered and not one that the school board could have provided if it had been so inclined." *Lascari*, 116 N.J. at 46.

Once an Administrative Law Judge has issued a final order following a due process hearing, the aggrieved party may appeal that decision to a state court of competent jurisdiction or to the federal district court. 20 U.S.C. § 1415(c)(2).

B.      Review of an Administrative Law Judge's Decision

Plaintiffs' Motion, which is characterized as a Motion for Reversal of the Decision of the Administrative Law Judge, is essentially an appeal of Judge Stein's decision. In reviewing an administrative determination in an IDEA case, the Court applies a modified version of *de novo* review. *S.H.*, 336 F.3d at 270. Under this standard of review, while the Court must make its own findings based on a preponderance of the evidence, the Court must also afford "'due weight'" to the administrative law judge's determination. *Rowley*, 458 U.S. at 206. The purpose of the "due weight" standard is to "prevent the court from imposing its own view of preferable educational methods on the states. *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993)

5

(citing *Rowley*, 458 U.S. at 207).  Under this standard, "[f]actual findings from the administrative proceedings are to be considered prima facie correct," and, where made, the administrative law judge's credibility determinations are "due special weight."  *Shore Reg'l High School Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (quoting *S.H.*, 336 F.3d at 271).  The deference afforded the administrative decision is, however, qualified, and while the Court must consider the administrative findings of fact, it need not necessarily accept same.  *D.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 898 (3d Cir. 1997).  However, "[i]f a reviewing court fails to adhere to [the administrative findings of fact], it is obliged to explain why."  *S.H.*, 336 F.3d at 270 (internal quotation marks and citation omitted).

### III. Discussion

Judge Stein found that Plaintiffs failed to satisfy their burden of proof in establishing that South Brunswick's proposed IEP for E.P. for the 2007-2008 academic year failed to provide E.P. with a FAPE as required by the IDEA.  Plaintiffs contest Judge Stein's decision and ask this Court to find that South Brunswick's proposed IEP for the 2007-2008 school year deprived E.P. of a FAPE.  Plaintiffs also ask this Court to find that their unilateral placement of E.P. at the Newgrange School was appropriate and to grant retroactive reimbursement for this placement.

The record below establishes that considerable deliberation went into Judge Stein's findings.  Judge Stein was presented with and considered a myriad of exhibits and heard testimony from several witnesses.  His decision sets forth a detailed synopsis of the testimony offered before him by both parties.  It also contains a measured analysis of the facts and expert opinions offered by the parties.

With respect to South Brunswick's proposed IEP for the 2007-2008 school year, Judge

Stein found that it provided E.P. with the opportunity for significant learning and a meaningful education benefit. In coming to this conclusion, Judge Stein heard testimony from

(1) E.C., E.P.'s mother;

(2) Sarah Seeman, a licensed occupational therapist who has been treating E.P. for approximately seven years and who was stipulated to be an expert in the field of Occupational Therapy;

(3) Dr. Andrea Footerman, a licensed psychologist who has treated E.P. since November 2002 and who was stipulated to be an expert in the field of psychology;

(4) Robert Hegedus, the principal of the Newgrange School, where Plaintiffs unilaterally placed E.P.;

(5) Dr. Stacy Tuchin, a licensed neuropsychologist who was stipulated to be an expert in the development of students with disabilities;

(6) Dr. Scott Ross, a licensed school psychologist, who has been employed as such for three years for the Child Study Team at Crossroads South Middle School and who was stipulated to be an expert in the field of school psychology;

(7) Noelle Kahney, a certified speech and language specialist, who is employed by the South Brunswick Board of Education as a speech and language pathologist and who worked with E.P. during the 2006-2007 school year;

(8) Carolyn Montoney, who has been employed for five years by the South Brunswick Board of Education as a Learning Disabilities Consultant after previously having worked as a sixth grade special education teacher in the Brunswick Middle School and who was assigned as E.P.'s case manager when he entered fifth grade; and

> (9)   Nikki Freidman, a licensed teacher who is employed by the South Brunswick Board of Education as a fifth grade regular education teacher and who taught E.P. in the fifth grade.

Not surprisingly, E.C., Dr. Footerman and Dr. Tuchin had different opinions regarding E.P.'s educational progress and the propriety of South Brunswick's proposed IEP for the 2007-2008 academic year from Dr. Ross, Ms. Kahney, Ms. Montoney and Ms. Friedman.  The former believed that E.P. had not made meaningful progress, whereas the latter believed that he did.  Ultimately, Judge Stein concluded that Ms. Kahney and Ms. Friedman were more credible than Dr. Tuchin and Dr. Fotterman.  Consequently, Judge Stein found that E.P. had "attained a meaning[ful] benefit[] from the educational program provided by the district and ha[d] made meaningful progress in academics and social skills." (J. Stein's Nov. 15, 2007 Op. at 22).  Judge Stein further determined that Plaintiffs failed to prove that the proposed IEP developed for E.P. was inappropriate and not reasonably calculated to provide him with a meaningful educational benefit in the least restrictive environment.  (*Id*. at 25).

Plaintiffs contest Judge Stein's findings for several reasons.  First, they argue that his decision that E.P. made meaningful academic and social progress was against the weight of the evidence, as the expert testimony offered shows that E.P. neither made academic progress in writing nor did he make social progress.  Second, Plaintiffs argue that Judge Stein's decision only focused on E.P.'s academic and social progress, and failed to consider his other education needs.  Specifically, Plaintiffs contend that Judge Stein failed to take into account E.P.'s emotional, behavioral, occupational therapy, processing, executive functioning and language needs.  Third, Plaintiffs argue that contrary to governing law, Judge Stein's decision alleged that

the appropriateness of the proposed IEP could not be determined until South Brunswick had an opportunity to modify it and E.P. tried it.  The Court addresses each of these arguments in turn.

After reviewing the evidence in the record as well as Judge Stein's assessment of the arguments raised by the parties, the Court finds that Judge Stein's finding that E.P. had made meaningful academic and social progress is supported by the evidence in the record.  While Plaintiffs' expert witnesses testified that South Brunswick's proposed IEP was not reasonably calculated to provide E.P. with a meaningful educational benefit, specifically because it failed to satisfactorily address his writing skills, one of E.P.'s areas of greatest academic need, and social skills, the witnesses proffered by South Brunswick testified that E.P. was making meaningful academic progress, including in his writing skills, and meaningful social progress.  Judge Stein found that South Brunswick's witnesses, who worked with E.P. on a daily basis, were more credible than Plaintiffs' witnesses, whose testimony Judge Stein found to be more clinical in nature.  Affording Judge Stein's determination the "special weight" it deserves, this Court agrees with his credibility determinations and with his factual findings derived therefrom.

In coming to this conclusion, the Court finds that both the testimonial as well as the non-testimonial evidence supports Judge Stein's findings.  For example, with respect to E.P.'s academic progress, the record below establishes that E.P. not only passed all of his mainstreamed fifth-grade classes, but he also passed both major content areas (Mathematics and Language Arts Literacy) of the New Jersey Assessment of Skills and Knowledge ("NJASK") standardized test.  *See Rowley*, 458 U.S. at 203 (finding that while not per se conclusive in determining that student received proper educational benefit from school district's IEPs, passing grades strongly suggest that student is receiving such educational benefit).  While it is true that E.P. scored three-tenths

of a point below proficient in the writing cluster of the Language Arts Literacy content area, this fact does not necessitate a finding that E.P. failed to make meaningful academic progress or that South Brunswick's proposed IEP was not reasonably calculated to provide E.P. with a meaningful educational benefit; nor does the fact that South Brunswick's proposed IEP failed to contain specific writing goals. While such writing goals may have been salutary, to provide E.P. with a FAPE, South Brunswick's proposed IEP did not have to offer E.P. the best educational benefit; instead, the proposed IEP only had to offer E.P. a meaningful educational benefit.

Further, with respect to E.P.'s social progress, the Court finds that there is ample testimonial and non-testimonial evidence to support Judge Stein's conclusion that E.P. was making social progress and that South Brunswick's proposed IEP was appropriate in this regard. Indeed, Ms. Kahney, Ms. Montoney and Ms. Friedman all testified that E.P. was growing socially, noting among other things that E.P. participated in class discussions, had friends, and made improvements with eye contact and turn-taking. Moreover, the proposed IEP contained specific social skills goals for E.P. for the 2007-2008 academic year. While two of the goals listed in the proposed IEP are not applicable because they are geared toward E.P.'s social behavior during recess, which does not occur in middle school, the others are all appropriate. Further, the Court does not believe that the fact that E.P. had failed to master social skills goals contained in previous IEPs necessitates a finding that E.P. was not making social progress. Everything considered, the Court finds that Judge Stein's finding that E.P. was making social progress is supported by the record below.

Turning next to Plaintiffs' argument that Judge Stein focused only on E.P.'s academic and social progress, and failed to consider E.P.'s other education needs, this Court finds that

Judge Stein satisfactorily considered all of E.P.'s educational needs in determining that Plaintiffs failed to prove that South Brunswick's proposed IEP was inappropriate.  From Judge Stein's detailed recitation of the testimony received below, it is clear that Judge Stein was aware that E.P.'s education involved more than simply attaining passing grades, but also involved E.P.'s emotional, behavioral, occupational therapy, processing, executive functioning and language needs.  Indeed, in reaching the conclusion that E.P. attained a meaningful benefit from the educational program provided by South Brunswick and that E.P. has made meaningful academic and social skill progress, Judge Stein plainly took into account E.P.'s organizational skills, writing skills, reading skills, language skills, executive functioning needs, and behavioral needs.  While Judge Stein may not have explained with particularity how each of the needs identified by Plaintiffs were addressed by South Brunswick's proposed IEP, it is clear that, contrary to Plaintiffs' arguments, these educational needs were not overlooked by Judge Stein.

In addition, even assuming that they were, after reviewing South Brunswick's proposed IEP as well as the other evidence presented below, this Court would independently conclude that South Brunswick's proposed educational program is designed to provide E.P. with a meaningful educational benefit.  As previously noted, E.P. passed all of his fifth-grade classes and achieved proficient scores in the two main content areas of the NJASK.  Further, South Brunswick's proposed IEP takes into account E.P.'s emotional, behavioral, occupational therapy, processing, executive functioning and language needs.  For example, the proposed IEP sets specific speech and language goals for E.P. and also calls for E.P. to receive speech/language therapy once a week.  Similarly, the proposed IEP notes that E.P. needs close supervision and organizational help (an executive functioning need) and provides that E.P. will receive assistance with

organization.  The proposed IEP also identifies that E.P. engages in self-injurious behavior, notes that a BIP is necessary and calls for baseline data to be collected during E.P.'s first two weeks of middle school so that an appropriate BIP can be implemented if needed.  Likewise, the IEP calls for E.P. to receive paraprofessional assistance for hall passing (i.e. transitions between classrooms), lunch, an OT break after lunch, art, foreign language and implementation of social skills/behavior plan.  With respect to his reading, language arts, mathematics, science and social studies classes, the IEP provides that E.P. will receive in-class support.  Further, while South Brunswick's proposed IEP does not specifically address E.P.'s anxiety disorder, it does note that E.P. has a sensitive nature and requires special attention.  The proposed IEP also provides for E.P. to receive small group counseling once a month and individual counseling as needed in order to address social skills goals.  Further, the IEP provides for E.P. to receive occupational therapy consultations as needed.

     While not an exhaustive list of everything contained in South Brunswick's proposed IEP for the 2007-2008 academic year, the items described above provide a fair summary of the educational services included in the IEP.  After reviewing same, the Court recognizes that South Brunswick's proposed IEP could have better provided for some of E.P.'s educational needs.  For example, it may have been better for the proposed IEP to have attached a specific BIP, instead of attaching no BIP and calling for one to be implemented after the data collection period if necessary.  Further, E.P. may have also been better served had the proposed IEP specifically addressed his anxiety issues.  Indeed, the Court could identify several modifications to the proposed IEP that may have better served E.P.  However, that is not the standard by which South Brunswick's proposed IEP is judged.  The Court is not concerned with whether South

Brunswick's proposed IEP would maximize E.P.'s potential or provide him with the best education possible. *See Holmes*, 205 F.3d at 589-90. Instead, the Court is concerned with whether the proposed IEP would confer significant learning and a meaningful educational benefit on E.P., and just as the Court does not doubt that improvements to the proposed IEP are possible, after reviewing same, the Court is equally convinced that that IEP would provide E.P. with significant learning and a meaningful educational benefit.

Moving next to Plaintiffs' argument that, contrary to governing law, Judge Stein's decision alleged that the appropriateness of the proposed IEP could not be determined until South Brunswick had an opportunity to modify it and E.P. tried it, the Court disagrees with Plaintiffs' interpretation of Judge Stein's decision. Contrary to Plaintiffs' argument, the Court finds that Judge Stein did not find that the appropriateness of the proposed IEP could not be determined until South Brunswick had an opportunity to modify it and E.P. tried it. Instead, Judge Stein determined on the record before him that Plaintiffs failed to prove that the IEP proposed by South Brunswick was inappropriate. Judge Stein's comments that E.P.'s transition to and academic achievement in middle school "cannot be predicted with certainty, nor can the extent and success of any modifications or changes to the program once E.P. has started" and his statement that "the district had no opportunity to address the alleged deficiencies with the middle school program since E.P. never attended the school" (J. Stein's Nov. 15, 2009 Op. at 25) do not indicate that Judge Stein required Plaintiffs to prove that any modifications to South Brunswick's proposed IEP would also be inappropriate or that Judge Stein held that Plaintiffs failed to meet their burden because E.P. had not tried the proposed program. Rather, through those statements, Judge Stein was simply (1) addressing Plaintiffs' concerns, (2) acknowledging that despite his

decision that South Brunswick's proposed IEP was reasonably calculated to provide E.P. with a meaningful educational benefit, it was impossible to know "with certainty" that the proposed IEP would prove successful (*Id.*), and (3) noting that despite the lack of absolute certainty, where a proposed IEP is reasonably calculated to provide a student with a meaningful educational benefit, school districts are not required to extend services merely "for fear that certain personality traits may emerge to thwart progress." (*Id.*) Further, even if Judge Stein had incorrectly held that the appropriateness of the proposed IEP could not be determined until South Brunswick had an opportunity to modify it and E.P. tried it, this erroneous holding would be of no moment because this Court has already determined that South Brunswick's proposed IEP as written in March 2007 was reasonably calculated to confer significant learning and a meaningful educational benefit upon E.P.

  Finally, because the Court has determined that Judge Stein correctly determined that South Brunswick's proposed IEP for the 2007-2008 school year was designed to confer significant learning and a meaningful educational benefit upon E.P., the Court does not reach the issue of whether Plaintiffs' unilateral placement of E.P. at the private Newgrange School was proper. Nevertheless, the Court notes that given the IDEA's requirement that children falling under its provisions be educated in the "least restrictive environment[,]" (20 U.S.C. § 1412(a)(5)(A)) and the IDEA's preference for mainstreaming (*S.H.*, 336 F.3d at 265; *Carlisle Area Sch.*, 62 F.3d at 535.), the Court would be hard pressed to determine that placement of E.P., a high functioning autistic/multiply disabled child, who successfully completed fifth-grade in the top one-third to one-fourth of his mainstreamed class, and who successfully passed both major content areas of the NJASK, at the private Newgrange School, which is attended solely by

14

students with disabilities, was proper.

### IV.    CONCLUSION

For the reasons stated above, this Court agrees with Judge Stein's finding that Plaintiffs failed to establish that South Brunswick's proposed IEP for E.P. for the 2007-2008 academic year was not reasonably calculated to confer significant learning and a meaningful educational benefit upon E.P.  Consequently, Plaintiffs' Motion for Reversal of the Decision of the Administrative Law Judge is DENIED and South Brunswick's request for judgment is GRANTED.  An appropriate Order follows.

                                        s/Tonianne J. Bongiovanni
                                        **HONORABLE TONIANNE J. BONGIOVANNI**
                                        **UNITED STATES MAGISTRATE JUDGE**